IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| CHANDAN MANANSINGH and ANGELA NAIRNS, | Case No. 2:20-cv-01139-DWM |
| Plaintiffs, | OPINION and ORDER |
| vs. | |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

Plaintiffs Chandan Manansingh and Angela Nairns (collectively "Plaintiffs") allege constitutional claims under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and tort claims under the Federal Tort Claims Act ("FTCA"), arising out of a probationary search and federal indictment.  [ECF Nos. 49.]  The defendants, several federal probation officers and the United States, seek to dismiss Plaintiffs' claims or, alternatively, for a more definite statement.  [ECF Nos. 50, 51.]  All but one claim is dismissed.

## BACKGROUND

At this stage, the factual allegations in the complaint "are taken as true and construed in the light most favorable to the plaintiffs."  *Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001) (internal quotation marks and citation omitted).

## I.    The Search and Indictment

On April 1, 2016, Defendants Shawn Mummey, Robert Aquino, Todd Fredlund, and Steve Goldner, officers with the United States Probation Office for the District of Nevada, (collectively with Chad Boardman, "Probation Defendants") executed a warrantless search of Plaintiffs' residence, pursuant to the conditions of Manansingh's federal supervision. [ECF No. 49 at ¶¶ 28, 30.] Defendants Mummey and Aquino obtained approval for the search from their Chief Probation Officer, Defendant Boardman, on the grounds of a positive drug screen for anabolic steroids and the failure to pay towards Manansingh's court-ordered fine. [*Id.* at ¶¶ 28, 31.] The search uncovered two pistol magazines containing multiple rounds of .380 caliber ammunition. [*Id.* at ¶ 65.]

On May 11, 2016, Manansingh was indicted for prohibited person in possession of ammunition under 18 U.S.C. § 922(g)(1). [*Id.* at ¶ 77.] Nevertheless, Manansingh successfully sought to suppress the ammunition. [*Id.* at ¶¶ 80, 128–29.] Following an evidentiary hearing, United States District Judge Richard F. Boulware, II determined that the officers lacked reasonable suspicion for the search on the grounds, *inter alia*, that the Probation Defendants "did not have any information to suggest that Manansingh had alternative sources of income" and had received laboratory results which "confirmed that Manansingh had not been using steroids." *United States v. Manansingh*, 281 F. Supp. 3d 1096,

1100–01 (D. Nev. 2017), *aff'd United States v. Manansingh*, 733 F. App'x 390 (9th Cir. 2018).  The United States ultimately moved to dismiss the indictment, which occurred on June 21, 2018.  [ECF No. 49 at ¶ 152.]

## II.    Plaintiffs' Claims

Plaintiffs filed this suit on June 19, 2020, alleging eighteen causes of action related to the search and subsequent criminal indictment.  [ECF No. 3.]  On November 20, 2020, the defendants filed motions to dismiss Plaintiffs' claims.  [*See* ECF Nos. 37, 38.]  Instead of responding, Plaintiffs filed an amended complaint on January 15, 2021, supplementing their factual allegations, adding four causes of action, and removing six causes of action.  [*See* ECF No. 49.]  Fundamentally, Plaintiffs allege that the Probation Defendants knew that the grounds for the April 1, 2016 search were bogus at the time, planted the ammunition they seized, and made false representations throughout the prosecution.  [*See generally, id.*]  Plaintiffs further allege that the Probation Defendants' conduct was premised on their racial and ethnic animus toward Manansingh, who is East Indian.  [*See id.* at ¶¶ 68–69, 91–93, 98, 115–17, 122.]

In the First Amended Complaint, Plaintiffs raise sixteen claims.  Against the Probation Defendants, they allege Fourth Amendment *Bivens* claims for unreasonable search (Claim 1), illegal entry (Claim 2), and unreasonable seizure (Claim 3).  They also raise Fifth Amendment *Bivens* claims for violations of

substantive due process (Claim 4), procedural due process (Claim 5), and equal protection (Claim 6). They further allege an Eighth Amendment *Bivens* claim for cruel and unusual punishment (Claim 7), a claim of conspiracy to deprive equal protection (Claim 8), and a claim of failure to intercede (Claim 9). Plaintiffs then allege seven tort claims against the United States pursuant to the FTCA: intentional infliction of emotional distress (Claim 10); malicious prosecution (Claim 11); abuse of process (Claim 12); invasion of privacy (Claim 13); false light (Claim 14); trespass (Claim 15); and negligence (Claim 16).[1]

The defendants seek to dismiss the First Amended Complaint for lack of subject matter jurisdiction under Rule 12(b)(1), failure to state a claim upon which relief can be granted under Rule 12(b)(6), and failure to contain a short and plain statement of Plaintiffs' claims showing that Plaintiffs are entitled to relief. [ECF Nos. 50, 51.] Alternatively, the defendants ask the Court to compel Plaintiffs to make a more definite statement of their claims pursuant to Rules 8(a) and 12(e).

## SUMMARY CONCLUSION

Plaintiffs' 55-page, 275-paragraph, 16-cause of action Amended Complaint epitomizes the debate term "Gish Gallop," which describes the practice of using an excessive number of arguments to overwhelm an opponent without regard to their

---

[1] Nairns is a plaintiff for Claims 1–4, 8–13, 15–16. Because these claims all fail as a matter of law as explained below, they are not specifically discussed in relation to Nairns. That said, very few of the factual allegations regard Nairns herself.

accuracy or strength.  Contrary to Plaintiffs' approach, this style of pleading hurts, rather than helps, their case.  Instead of providing a framework within which the case can develop, it shoehorns the case into a narrative that will be difficult, if not impossible, for Plaintiffs to prove.  It also makes it hard for the defendants and the Court to accurately address and respond to each claim.  The tedium inherent in untangling Plaintiffs' Gish Gallop is apparent in this lengthy order.

## LEGAL STANDARDS

### I.    Rules 8 and 12(e)

The defendants seek to dismiss the First Amended Complaint on the grounds that "Plaintiffs' allegations are not simple, concise, or direct" as required by Rule 8(a) and (e).  [ECF No. 51 at 16.]  Alternatively, they seek a more definite statement under Rule 12(e).  In response, Plaintiffs argue that "Rule 12(e) motions are usually granted only if the complaint is so unintelligible that the defendant cannot draft a responsive pleading."  [ECF No. 58 at 19.]  Plaintiffs insist that standard has not been met here as the defendants can "admit, deny, or claim lack of knowledge" as to each alleged fact.  [*Id.*]

Pursuant to Rule 8(a)(2), "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief."  In doing so, the plaintiff must "give the defendant fair notice of what the plaintiff's claim is and the grounds up on which it rests."  *Tellabs, Inc. v. Makor*

*Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007).  However, "[s]pecific facts are not necessary."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam).  Here, Plaintiffs' pleading does the exact opposite of what is envisioned by Rule 8.  Rather than providing notice of claims with facts to be developed as the case proceeds, the Amended Complaint is a torrent of accusatory factual allegations generally divorced from the individual causes of action presented.  Plaintiffs have been previously warned about the dictates of Rule 8, [*see* ECF No. 48 at 2], and are apparently either unwilling or unable to comply.

Based on the foregoing, the defendants argue that the Amended Complaint is "so vague or ambiguous" that it warrants a more definite statement should the defendants be required to answer.  *See* Fed. R. Civ. P. 12(e).  Despite the deficiencies in the pleading, however, it is not clear that it could be saved by a more definite statement.  And, Plaintiffs' claims and the conduct complained of can be distilled as outlined above (with limited exception, *see e.g.*, Claim10).  Thus, it is appropriate to consider the Amended Complaint under the Rule 12(b) dismissal standards.  But, as the Court previously warned, Plaintiffs' pleading style only hurts, not helps, the plausibility of their claims.  [*See* ECF No. 48 at 2.]

## II.    Rule 12(b)(1)

"The United States is immune from suit unless it consents to be sued." *Edison v. United* States, 822 F.3d 510, 517 (9th Cir. 2016).  The FTCA waives the

sovereign immunity of the United States for tortious acts or omissions of federal employees. 28 U.S.C. §§ 1346(b)(1), 2674. The question of whether the United States has waived its sovereign immunity is one of subject matter jurisdiction and is considered under a Rule 12(b)(1) standard. *Edison*, 822 F.3d at 517. A Rule 12(b)(1) challenge can be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Here, the United States' arguments are primarily facial, which means that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.*

## III. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a claim must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal under Rule 12(b)(6) is appropriate, however, "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (internal quotation marks omitted).

### ANALYSIS

Ultimately, almost all of Plaintiffs' claims are untimely. All but one of the remaining claims are either not recognized under *Bivens* or fail to state a claim. As a result, only Plaintiffs' Fifth Amendment fabrication of evidence claim against Mummey and Aquino is left standing.

## I.     Timeliness

In one form or another, Plaintiffs' claims are subject to a two-year time bar. In the *Bivens* context, federal civil rights claims are subject to the forum state's statute of limitations applicable to personal injury claims. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Nevada, the statute of limitations for personal injury is two years. Nev. Rev. Stat. § 11.190(4)(e). Similarly, in the context of Plaintiffs' tort claims, the waiver of the United States' sovereign immunity requires such claims be presented to the appropriate federal agency within two years of their accrual. 28 U.S.C. § 2401(b). In both contexts, however, federal law determines when a claim accrues and when the applicable limitations period begins to run. *See Wallace*, 549 U.S. at 388. "[A]ccrual occurs when the plaintiff has a complete and present cause of action, . . . that is, when the plaintiff can file suit and obtain relief." *Id.* (internal citations, quotation marks, and brackets omitted).

Here, Plaintiffs filed their administrative tort claim on June 24, 2019, [ECF No. 50 at 22], and their complaint on June 18, 2020, [ECF No. 3]. The defendants challenge the timeliness of many of Plaintiffs' claims on the grounds that they

accrued on April 1, 2016, the date of the search.  In response, Plaintiffs argue that their claims are timely because they could not be brought under *Heck v. Humphrey*, 512 U.S. 477 (1994), until the dismissal of Manansingh's criminal case or, alternatively, that they have satisfied the requirements for equitable tolling. Plaintiffs' arguments are not persuasive and most of their claims are untimely.

### A.    *Heck* Bar

Plaintiffs first argue that their claims would have been barred by *Heck* had they pursued them prior to the June 21, 2018 dismissal of Manansingh's indictment.  The argument is unpersuasive.  "*Heck* established the now well-known rule that when an otherwise complete and present § 1983 cause of action would impugn an extant conviction, accrual is deferred until the conviction or sentence has been invalidated."  *Bradford v. Scherschligt*, 803 F.3d 382, 386 (9th Cir. 2015).  While the Ninth Circuit determined at one point that the *Heck* bar extended to pending criminal proceedings, *see Harvey v. Waldron*, 210 F.3d 1008, 1014–16 (9th Cir. 2000), the Supreme Court subsequently held in *Wallace*, that "*Heck* applies only when there is an extant conviction and is not implicated merely be the pendency of charge," *Bradford*, 803 F.3d at 386 (citing *Wallace*, 549 U.S. at 392–94); *see also Mills v. City of Covina*, 921 F.3d 1161, 1166 n.1 (9th Cir. 2019) ("*Harvey*'s deferred accrual rule has been 'effectively overruled' and is no longer good law.").  Here, no conviction was ever obtained, let alone invalidated, so *Heck*

does not apply. "Consequently, the resolution of this [case] hinges on traditional rules of accrual and not on the extension of *Heck* to [these] proceedings." *Bradford*, 803 F.3d at 386.

## B. Equitable Tolling

Alternatively, Plaintiffs argue that their claims are subject to equitable tolling. "State law [] determines the application of tolling doctrines." *Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir. 1995). Under Nevada law, "equitable tolling may apply in such cases when the plaintiff demonstrates reasonable diligence in pursuing his or her claims and extraordinary circumstances that prevented him or her from timely filing the complaint." *Fausto v. Sanchez-Flores*, 482 P.3d 677, 679 (Nev. 2021); *see id*. at 683 (holding that NRS 11.190(4)(e) may be subject to equitable tolling). "[T]he focus of equitable tolling is whether there was *excusable delay* by the plaintiff." *Id.* at 681–82 (internal quotation marks omitted).

Here, Plaintiffs argue that Manansingh's continuing criminal prosecution warrants equitable tolling. That argument is unpersuasive because Manansingh was not prevented from bringing his claims during that time by *Heck*. *See Mills*, 921 F.3d at 1167. Nor was the mere possibility of a *Heck* bar sufficient. *See id.* at 1168. Because nothing prevented Plaintiffs from presenting their claims during Manansingh's criminal prosecution (to the extent they had accrued), Plaintiffs have

failed to show reasonable diligence in pursuing those claims or that extraordinary circumstances prevented them from filing.

## C.     Individual Claims

Considering the accrual date for each cause of action, Claims 1–3, 5, 6, 8, 9, 13–16 are untimely; as is part of Claims 4, 7, and 12.  That analysis is below.

### 1.     Fourth Amendment (Claims 1, 2, and 3)

Here, Plaintiffs allege three separate but related Fourth Amendment claims for unreasonable search (Claim 1), illegal entry (Claim 2), and unreasonable seizure (Claim 3) based on the warrantless search of their residence on April 1, 2016.  [ECF No. 49 at ¶ 28.] The accrual date for these claims is the date the search and arrest occurred.  *See Mills*, 921 F.3d at 1166; *see also Pierson v. Storey Cty.*, 2013 WL 6210336, at *4 (D. Nev. Nov. 27, 2013) (collecting cases); *Hamann v. Charter Twp. of Van Buren*, 2021 WL 534487, at *5 (E.D. Mich. Feb. 11, 2021) (same).  While Plaintiffs argue that the Probation Defendants perpetuated the false grounds provided for the search throughout Manansingh's criminal proceeding, Plaintiffs consistently allege that the Probation Defendants knew the search was infirm at the time it occurred.  These claims are therefore untimely.

### 2.     Fifth Amendment Due Process (Claims 4 and 5)

In their fourth and fifth claims, Plaintiffs alleged that the Probation Defendants violated their substantive and procedural due process rights in violation

of the Fifth Amendment. [ECF No. 49 at ¶¶ 178–94.] Specifically, they allege that the Probation Defendants "lacked reasonable suspicion" to execute a warrantless search and "caused [Manansingh] to be detained absent probable cause." [*Id.* at ¶¶ 181, 191.] They also allege that the Probation Defendants fabricated evidence. [*Id.* at ¶ 184.] As argued by the Probation Defendants, these allegations—except for the fabrication claim—are based on conduct surrounding the April 1 search. They are therefore untimely.

Moreover, most of Plaintiffs' due process allegations are more properly analyzed under the Fourth Amendment. Plaintiffs allege the Probation Defendants failed to follow their internal policies and procedures regarding their warrantless search and his arrest. [ECF No. 49 at ¶¶ 183, 190, 193.] "[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (internal quotation marks omitted). To the extent Plaintiffs challenge a "search[] and seizure[]," their claim is "'covered by' the Fourth Amendment," *id.* at 843, and is therefore dismissed on this basis as well.

Nevertheless, Plaintiffs' substantive due process claim (Claim 4) includes a properly pled Fifth Amendment fabricated evidence claim. [*See* ECF No. 49 at

¶¶ 180, 184.] "[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001) (en banc). That claim is also timely, as it did not accrue until "the criminal proceedings against [Manansingh] terminated in his favor." *McDonough v. Smith*, 139 S. Ct. 2149, 2161 (2019). Here, the criminal case against Manansingh was dismissed by order of the district court on June 21, 2018. Although it was not a final assessment of innocence, courts have held that dropping charges or a *nolle prosequi* is an affirmative choice to terminate criminal proceedings *for purposes of claim accrual. See Randall v. City of Phila. Law Dep't*, 919 F.3d 196, 199 (3d Cir. 2019) (holding that criminal proceedings terminated in the plaintiff's favor when the state dropped charges against him); *Spak v. Phillips*, 857 F.3d 458, 464 (2d Cir. 2017) (holding that *nolle prosequi* is a favorable termination for accrual purposes).[2] Because Plaintiffs brought their fabrication claim within two years of the dismissal of the criminal charges against Manansingh, that claim is timely.

### 3. Fifth Amendment Equal Protection (Claim 6)

---

[2] "Favorable termination" in this context is not necessarily concomitant with the "favorable termination" element of malicious prosecution. *See Roberts v. City of Fairbanks*, 947 F.3d 1191, 1202 n.12 (9th Cir. 2020) (malicious prosecution claim may require termination "dispositive of the defendant's innocence").

In his sixth cause of action, Manansingh alleges that the Probation Defendants "stopped, detained, searched, seized, and arrested [him] solely on the basis of his race, ethnicity, skin color, and/or perceived national origin in violation of the Fifth Amendment." [ECF No. 49 at ¶ 196.] The conduct upon which Manansingh bases his equal protection claim occurred at the time of the April 1, 2016 search. [*See id.*] Because a cause of action based on these facts accrued as soon as it occurred, *see Wallace*, 549 U.S. at 391, his equal protection claim needed to be brought by April 1, 2018. It was not. This claim is also untimely.

### 4.    Eighth Amendment (Claim 7)

In his seventh cause of action, Manansingh alleges that the search of his home and his resulting incarceration and supervision caused "severe psychological harm, constituting cruel and unusual punishment" in violation of the Eighth Amendment. [ECF No. 49 at ¶¶ 199–203.] The timeline of Manansingh's detention and supervision is a bit confusing. A review of his criminal dockets indicates that he was originally taken into custody on a petition to revoke in April 2016, although he appeared on his new charges in May 2016 and his revocation case was consolidated with his new charges in November 2016. A revocation judgment was entered in July 2017, which sentenced him to time served and imposed no additional supervision. It therefore appears that he was incarcerated immediately following the April 2016 search until June 2, 2017. [*See* ECF No. 49

at ¶ 145.]  He then appears to have briefly been on release, [*see id.* at ¶ 145], until he was placed in a residential reentry center until October 23, 2017, [*see id.* at ¶ 132].  He was then released on pretrial supervision until his indictment was dismissed on June 21, 2018.  [*See id.* at ¶¶ 132, 134.]  Overall, Manansingh alleges that he was incarcerated for 18 months, in a residential re-entry center for four months, and under supervision for 26 months.  [*See id.* at ¶ 75.]

Based on the above, Manansingh's challenge to the conditions of his incarceration accrued no later than July 2017 and to the residential reentry center accrued no later than October 2017.  *See Wallace*, 549 U.S. at 391.  Those claims are therefore untimely, leaving only a potential claim arising out of pretrial supervision.  For that claim to be timely, however, the violative conduct would have had to occur during the last few days of Manansingh's supervision.  There are no specific allegations of such conduct.  But to the extent there are, such a claim fails under *Bivens* as discussed below.

### 5. 42 U.S.C. § 1985(3) (Claim 8)

Plaintiffs' eighth cause of action asserts a violation of 42 U.S.C. § 1985(3) for conspiracy to ruin Manansingh's re-entry into the legal profession and secure a felony conviction against him.  [ECF No. 49 at ¶ 205.]  "[S]uits under § 1985(3) are [] best characterized as personal injury actions and are governed by the same statute of limitations as actions under § 1983."  *McDougal v. Cty. of Imperial*, 942

F.2d 668, 673–74 (9th Cir. 1991).  Therefore, Plaintiffs' § 1985(3) claim is subject to the two-year statute of limitations set forth in Nevada Revised Code § 11.190(4)(e).  Here, Plaintiffs allege that the Probation Defendants entered into an agreement "to detain, fabricate evidence, plant evidence, fabricate reasonable suspicion, and arrest and interrogate Mr. Manansingh in furtherance of their plan and scheme to rid the legal profession of Mr. Manansingh, secure a felony conviction against him, and send him to prison."  [ECF No. 49 at ¶ 205.]  Plaintiffs generally allege that "[t]he harassment and abuse of Mr. Manansingh at the hands of Probation took place from April 1, 2016 until June 21, 2018, the day Smith finally dismissed the indictment against Mr. Manansingh and his ordeal with the Defendants concluded."  [*Id.* at ¶ 152.]

Although the breadth of Plaintiffs' claim makes it difficult to identify the specific actions that underlie their § 1985(3) claim, Plaintiffs do not allege any specific conduct by any of the Probation Defendants after June 2017, [*see* ECF No. 49 at ¶¶ 145], and it is difficult to see how any conspiracy among the Probation Defendants related to the criminal charges could have continued after the written grant of the motion to suppress on August 31, 2017, *see* 2:16-cr-140-RFB, ECF Nos. 60, 74.  And, as far as Manansingh's license to practice law, the Amended Complaint alleges only dates in 2015.  [*See* ECF No. 49 at ¶¶ 21–22.]  As a result, Plaintiffs' § 1985(3) claim is also untimely.

Even if the claim was timely, however, the Probation Defendants are entitled to qualified immunity because the law is not "clearly established" regarding the application of the intracorporate conspiracy doctrine. *See Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1059, 1060 (9th Cir. 2020); *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867–68 (2017); *Hasbrouck v. Yavapai Cty.*, 2021 WL 321894, at *15 (D. Ariz. Feb. 1, 2021) (discussing approach among district courts).

### 6. Failure to Intercede (Claim 9)

In their final constitutional claim, Plaintiffs set forth allegations they label as "Failure to Intercede." [ECF No. 49 at ¶¶ 211–16.] Included in that claim is the allegation that the Probation Defendants "did nothing to prevent the submission of false statements in support of reasonable suspicion to perform a residential warrantless search in this matter and did nothing to prevent the ensuing unconstitutional search and foreseeable injuries to Plaintiffs." [*Id.* at ¶ 213.]

A failure to intervene claim is "analytically the same" as an underlying violation. *Glair v. City of L.A.*, 2018 WL 3956728, at *4 (C.D. Cal. 2018) (quoting *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 81 (1996)). To support such a claim, a plaintiff must allege facts indicating that the defendant was aware that other defendants were violating the plaintiff's constitutional rights and had a realistic opportunity to intervene and prevent the violation." *Id.* Accordingly, Plaintiffs' failure to intervene claim is not

necessarily duplicative of their Fourth Amendment allegations. However, like Plaintiffs' Fourth Amendment claims, this claim is predicated on conduct related to the April 1, 2016 search and seizure. It is therefore untimely.

Even it this claim were timely, however, courts have declined to extend *Bivens* under similar facts. *See Ting v. United States*, 927 F.2d 1504, 1511 (9th Cir. 1991) (refusing to extend *Bivens* to claim against non-shooting agents of SWAT team that failed to intervene); *Hunt v. Matevousian*, 336 F. Supp. 3d 1159, 1170 (E.D. Cal. 2018)

### 7.     Abuse of Process (Claim 12)

Plaintiffs allege the Probation Defendants made "misleading and material misrepresentations to invoke the warrantless search clause of Mr. Manansingh's probation in order to search his residence in the absence of probable cause or reasonable suspicion." [ECF No. 49 at ¶ 239.] They further allege that the Probation Defendants fabricated evidence, planted the ammunition, made false and misleading statements at the suppression hearing, and intentionally withheld exculpatory evidence based on malicious intentions such as "racial bias, motive, and personal animus," and "likely" made misleading statements to the grand jury [*Id.* at ¶¶ 239–40.] They also allege that Mummey and the prosecutor likewise attempted to inappropriately contact, intimidate, embarrass, and harass Nairns to influence her testimony. [*Id.* at ¶¶ 240–41.] Finally, Plaintiffs allege that "[t]he

defendants' abuse of process continues to the present day" insofar as the United States "has obstinately, and absent a good faith basis, refused to respond to Mr. Manansingh's Motion for Attorney's Fees." [*Id.* at ¶ 245.]

"Unlike a claim for malicious prosecution, a claim for abuse of process does not require that the action in which the process issued has terminated successfully." *Pitsnogle v. City of Reno*, 2009 WL 10659498, at *8 (D. Nev. Sept. 30, 2009). "A cause of action for abuse of process accrues from the termination of the acts which constitute the abuse complained of, and not from the completion of the action in which the process issued." *Id.* (internal quotation marks omitted). Here, Plaintiffs' abuse of process claims are based on conduct leading up to the April 1, 2016 search, the April 1, 2016 search itself, the May 2016 grand jury charge, and events leading up to and including the March 2017 evidentiary hearing on the motion to suppress. Because Plaintiffs knew the facts supporting their abuse of process claims at those times, their claims based on that conduct are not timely filed and are therefore dismissed. *See Cave v. O'Brinkley*, 2021 WL 961745, at *2 (D. Nev. Mar. 15, 2021) (dismissing abuse of process claim based on date of initial search and arrest in case challenging warrant).

The only claim that is not time-barred is that regarding the government's failure to respond to Manansingh's motion for fees, which is discussed below.

### 8. Invasion of Privacy (Claim 13)

Plaintiffs allege that their privacy was invaded when the Probation Defendants entered and searched their home on April 1, 2016. [ECF No. 49 at ¶¶ 251–53.] "The limitation period for an invasion of privacy action begins to run at the time of the occurrence of an act constituting an invasion of privacy, regardless of the time when the damage results." 62A Am. Jur. § 145 (May 2021) (footnotes omitted). Because this claim is premised on the April 1, 2016 search and entry, it is not timely.

### 9. Invasion of Privacy – False Light (Claim 14)

Individually, Manansingh alleges that the defendants placed him in a false light by seeking a criminal indictment in the public record "advocating that he was illegally using anabolic steroids in violation of a condition of probation" despite the evidence to the contrary. [ECF No. 49 at ¶¶ 260, 262, 263.] A false light claim accrues "when the wrong occurs and a party sustains injuries for which relief could be sought." *Jackson v. L.V. Rev. J.*, 2018 WL 4173192, at *2 (Nev. App. Aug. 10, 2018) (unpublished). Given the broad nature of the pleading, it is difficult to say exactly which comments are at issue and exactly when they occurred. However, the initial "publishing" of Manansingh's alleged steroid use and his federal ammunition charges all occurred in 2016 and 2017. Thus, Manansingh's false light claim accrued at that time even if the government did not dismiss the charges until June 21, 2018. As a result, this claim is time-barred.

Even if this claim were timely, however, the FTCA retains the United States' sovereign immunity for claims arising out of libel or slander. 28 U.S.C. § 2680(h). "The Ninth Circuit has found that, while not enumerated in 28 U.S.C. § 2680(h), defamation and false light arise from the same conduct as slander, meaning sovereign immunity is not waived for those torts, either." *Saint-Fleur v. Barretto*, 2019 WL 2207670, at *5 (E.D. Cal. May 22, 2019) (citing *Safford Aviation Serv., Inc. v. United States*, 14 F. App'x 945, 946 (9th Cir. 2001), and *Adams v. United States*, 188 F. App'x 571 (9th Cir. 2006)); [*see also* ECF No. 50 at 31–32 (collecting cases)]. Accordingly, the Court lacks subject matter jurisdiction over this claim.

### 10. Trespass (Claim 15)

Plaintiffs' trespass claim is premised on the Probation Defendants' April 1, 2016 execution of a warrantless search on their residence in the absence of probable cause or reasonable suspicion. [ECF No. 49 at ¶ 268.] Trespass claims accrue "at the time of entry or encroachment," *Kaplan v. Cty. of Washoe*, 464 P.3d 127, *2 (Nev. 2020) (unpublished); *see also Petersen v. Bruen*, 792 P.2d 18, 20 (Nev. 1990). This claim is therefore untimely.

### 11. Negligence (Claim 16)

Plaintiffs allege the defendants were negligent in that they owed "a duty of care to avoid causing unnecessary physical harm and distress to persons through

their use of force and making of arrests." [ECF No. 49 at ¶ 273.] Plaintiffs argue

that they breached this duty through both their illegal search and through

"commencing an illegal prosecution." [*Id.* at ¶ 274.] Plaintiffs' negligence claim

accrued at the time they were damaged by allegedly negligent conduct. *See*

*Wallace*, 549 U.S. at 391. Here, their claims, like so many others, are based on

what occurred during or immediately after the April 1, 2016 search. As a result,

this claim is also time-barred.

## II. *Bivens* Remedies

Only two of Plaintiffs' *Bivens* claims are potentially timely; their Fifth

Amendment fabrication of evidence claim (part of Claim 4) and their Eighth

Amendment conditions of supervision claim (part of Claim 7). Only the former

can proceed under *Bivens*.

In a constitutional action against a federal officer, a threshold consideration

is whether a plaintiff may bring a *Bivens* suit in the first place. *See Abbasi*, 137 S.

Ct. at 1854. In 1971, the Supreme Court recognized for the first time an implied

right of action against federal officers for constitutional violations. *See Bivens*,

403 U.S. at 398. The Court held that the plaintiff was entitled to sue federal agents

for damages arising out of an unlawful arrest and search under the Fourth

Amendment. *Id.* at 398. Following *Bivens*, however, the Supreme Court has

repeatedly refused to recognize an implied damages remedy against federal

officials. *Abbasi*, 137 S. Ct at 1857 (describing the expansion of *Bivens* as "disfavored"). "This [trend] is in accord with the Court's observation that it has consistently refused to extend *Bivens* to any new context or new category of defendants." *Id.* (internal quotation marks omitted).

There is a two-step test for determining when a *Bivens* claim should be recognized. *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) (per curiam). The first question is "whether the request involves a claim that arises in a 'new context' or involves a 'new category of defendants.'" *Id.* (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). "New context" is interpreted broadly and a context is considered "'new' if it is 'different in a meaningful way from previous *Bivens* cases decided by this Court.'" *Id.* (quoting *Abbasi*, 137 S. Ct. at 1859). Though not exhaustive,

> [a] case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 137 S. Ct. at 1860. "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743.

If a claim arises in a new context, the second step of the test "ask[s] whether there are any special factors that counsel hesitation about granting the extension." *Id.* (cleaned up). "If there are," the request is rejected. *Id.* While there is not an "exhaustive list" of factors relevant to this inquiry, "separation-of-powers principles" are "central to [this] analysis." *Id.* (quoting *Abbasi*, 137 S. Ct. at 1857) (alteration in original).

## A.    Fabrication of Evidence (Claim 4)

Under the two-step inquiry identified above, the first question is whether Plaintiffs' fabrication claim seeks a *Bivens* remedy in a new context. *Abbasi*, 137 S. Ct. at 1859–60. Because the Supreme Court has extended *Bivens* only twice since it was decided, *see Carlson v. Green*, 446 U.S. 14 (1980) (Eight Amendment's Cruel and Unusual Clause provided a prisoner's estate with a remedy for failing to provide adequate medical treatment); *Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment Due Process clause gave a Congressman's assistant a damages remedy for gender discrimination), a Fifth Amendment fabricated evidence claim based on the conduct of probation officers is unquestionably a new context.

The next inquiry then is whether there are any special factors that counsel hesitation about extending *Bivens* to this context. *Hernandez*, 140 S. Ct. at 743. Despite the overwhelming reluctance of courts to extend *Bivens*, it does not seem

that any such factors exist here. The "novel" circumstances at issue here do not implicate overarching challenges to federal policy, military interest, or national security. Rather, Plaintiffs' Fifth Amendment fabrication claim differs in no meaningful way from the Fourth Amendment contexts that have already been recognized. *See Jacobs v. Alam*, 915 F.3d 1028, 1038–39 (6th Cir. 2019) (collecting cases for "run of the mill" law enforcement *Bivens* actions). Moreover, post-*Abbasi*, the Ninth Circuit permitted a *Bivens* action against a federal immigration prosecutor who falsified evidence. *See Lanuza v. Love*, 899 F.3d 1019, 1033 (9th Cir. 2018). This case hews more closely to *Bivens* than that. As a result, Plaintiff's fabrication claim shall proceed under *Bivens*.

B.     **Conditions of Pretrial Supervision (Claim 7)**

Because Manansingh's purported challenge to the conditions of his pretrial supervision is timely, the question is whether it is a recognized *Bivens* action. As a preliminary matter, however, the Eighth Amendment's prohibition of "cruel and unusual punishment" applies only after conviction and sentence. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Pre-trial detention, on the other hand, is governed by the Due Process Clause of the Fifth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 531 (1979). Because Manansingh revocation petition and sentence were terminated in July 2017, only his pre-trial supervision under the ammunition indictment remains at issue. Nevertheless, the protections afforded in

either instance are generally concomitant. *See City of Revere*, 463 U.S. at 244 ("[T]he due process rights of a person in [a pretrial detainment] situation are at least as great as the Eighth Amendment protections available to a convicted prisoner.").

Under the two-step inquiry identified above, the first question is whether Plaintiffs are seeking a *Bivens* remedy in a new context. *Abbasi*, 137 S. Ct. at 1859–60. In *Carlson*, the Supreme Court determined a *Bivens* remedy was available for an Eighth Amendment claim against federal prison officials for failing to provide adequate medical care to an inmate. 446 U.S. at 16, 16 n.1. But Manansingh is not making a medical care claim and is on pretrial supervision, not in custody, making this a "new context" under *Bivens* despite *Carlson*. Nor should *Bivens* be extended to this context. Out-of-custody supervision and the amorphous nature of Manansingh's claims makes it impossible to assess the propriety of permitting recovery. This is especially so because courts have determined that *Bivens* does not extend to all Eighth Amendment claims, *see Hunt*, 336 F. Supp. 3d at 1169–70 (declining to find an implied *Bivens* action under either the Fifth or Eighth Amendments for challenge to conditions of confinement); *see also Toney v. Williams*, 2020 WL 1912168, at *5 (S.D. Cal. Apr. 20, 2020) (collecting cases), including claims against probation officers related to supervision, *Atwood v. Burke*, 2019 WL 1427744, at *4–6 (S.D. Cal. Mar. 29, 2019) (refusing to extend to

liability for deliberate indifference to medical needs of individuals on supervision);

*Maples v. Pinal Cty.*, 453 F. Supp. 2d 1314, 1323 (D. Ariz. 2020) (refusing to

extend to claim for failure to protect supervisee from domestic abuser). Thus,

there is no recognized *Bivens* remedy for this claim. It is therefore dismissed.

## III. State a Claim

Only a narrow set of claims survive the procedural gauntlet identified above:

Fifth Amendment fabrication of evidence claim (part of Claim 4); intentional

infliction of emotional distress (Claim 10); malicious prosecution (Claim 11); and

abuse of process for prosecutor's failure to pay attorney fees (part of Claim 12).

Only a portion of one of these claims survives the next hurdle. They are discussed

in turn.

### A. Fifth Amendment Fabrication Claim (part of Claims 4)

Plaintiffs' fabrication claim is plausible, at least as to some defendants. To

sustain a deliberate fabrication of evidence claim,

> a plaintiff must, *at a minimum*, point to evidence that supports at least
> one of the following two propositions: (1) Defendants continued their
> investigation of [plaintiff] despite the fact that they knew or should have
> known that he was innocent; or (2) Defendants used investigative
> techniques that were so coercive and abusive that they knew or should
> have known that those techniques would yield false information.

*Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010)

(quoting *Devereaux*, 263 F.3d at 1076). Here, Plaintiffs allege that the Probation

Defendants deliberately ignored exculpatory information about Manansingh's

steroid test and pursued the search of his home on premises they knew to be false, [*see* ECF No. 49 at ¶¶ 40–49, 81, 88], and then failed to disclose that information to the defense for over six months, [*see id.* at ¶ 79]. They further allege that the Probation Defendants were aware of Manansingh's financial situation and, despite that knowledge, pursued their vendetta against him. [*Id.* at ¶¶ 58–61.] Plaintiffs further allege that the ammunition found during the April 1, 2016 search was "planted" by the Probation Defendants. [*Id.* at ¶ 66.] Finally, Plaintiffs allege that as the prosecution's case began to unravel, the Probation Defendants fabricated new grounds for the search, [*id.* at ¶ 87], and presented "frivolous and misleading arguments about Mr. Manansingh's lifestyle," [*id.* at ¶¶ 91–92]. Plaintiffs' allegations are sufficient to meet the "minimum" requirement outlined above.

However, in a *Bivens* case, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Here, Plaintiffs have not alleged any factual basis connecting Fredlund, Goldner, or Boardman to the alleged planted or fabricated evidence. To the contrary, Plaintiffs specifically allege that Boardman was not aware of the exculpatory evidence, [ECF No. 49 at ¶ 46], and that if he had been aware, he "likely would have[] withdrawn his authorization and approval of the search," [*id.* at ¶ 47]. As a result, Plaintiffs' fabrication claim survives only as to Mummey and Aquino; the remaining Probation Defendants are dismissed.

## B. Intentional Infliction of Emotional Distress (Claim 10)

Plaintiffs allege that the defendants' conduct "as set forth herein, was extreme and outrageous and beyond the scope of conduct which should be tolerated by citizens in a democratic society." [ECF No. 49 at ¶ 227.] The United States argues that Plaintiffs fail to identify any facts specifically related to their emotional distress claim. The United States is correct.

To state a claim for intentional infliction of emotional distress, a plaintiff must allege (1) that the defendant's conduct was extreme and outrageous; (2) that the defendant either intended or recklessly disregarded the causing of emotional distress; (3) that the plaintiff actually suffered severe or extreme emotional distress; and (4) that the defendant's conduct actually or proximately caused the distress. *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000). "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998).

Here, Plaintiffs do not specifically identify any particular acts by any particular defendants that fall into this category. Nor do they identify any treatment they have received or symptoms they have suffered in light of that conduct. Plaintiffs' "conclusory remarks are insufficient to support a plausible claim for intentional infliction of emotional distress." *Friedman v. United States*,

2019 WL 121965, at *5 (D. Nev. Jan. 7, 2019). Moreover, in the absence of specific incidents or actions, it is difficult to say whether Plaintiffs' claims are timely. To the extent Plaintiffs' claim arose out of the April 1, 2016 search, which is the focus of the Amended Complaint, they would not be.

Additionally, the United States argues that any distress based on alleged defamatory statements made by any federal employees is precluded by 28 U.S.C. § 2680(h), which bars claims arising out of libel and slander. The Ninth Circuit has held that § 2680(h) does not generally preclude an emotional distress claim. *Sheehan v. United States*, 896 F.2d 1168, 1169 (9th Cir. 1990). In doing so, however, the court emphasized that "the Supreme Court has focused inquiry on the conduct upon which plaintiff's claim is based[ r]egardless of the plaintiff's characterization of the cause of action." *Id.* at 1171. Because the conduct upon which Plaintiffs rest their emotional distress could constitute libel or slander, it would be barred by § 2680(h) "even though the conduct may also constitute a tort other than [libel or slander]" because "to hold otherwise would permit evasion of the substance of the exclusion of liability for [libel or slander]." *Id.*

Accordingly, Plaintiffs' emotional distress claim is dismissed for failure to state a claim. However, Plaintiffs may amend this claim insofar as their allegations identify specific "extreme or outrageous" conduct and specific "severe or extreme"

emotional distress that does not run afoul of either the time bar or the limitations imposed by the FTCA.

## C.    Malicious Prosecution (Claim 11)

To state a claim for malicious prosecution, a plaintiff must allege (1) that the defendant lacked probable cause to initiate the prosecution, (2) malice, (3) the prior criminal proceedings were terminated in his favor, and (4) he suffered damages. *LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002).  Here, Plaintiffs allege that Manansingh's prosecution for criminal possession of ammunition was malicious because the Probation Defendants lacked probable cause or reasonable suspicion for the April 1 search that uncovered the ammunition.  [ECF No. 49 at ¶ 232.]  The United States challenges this claim on three grounds: (1) there was probable cause for the § 922(g)(1) charge; (2) voluntarily dismissal following suppression was a favorable termination; and (3) the decision of the United States Attorney's Office to prosecute broke the chain of causation.[3]  Because the first two arguments are persuasive, Plaintiffs' malicious prosecution claim is dismissed.

### 1.    Probable Cause

The United States first argues that there was probable cause for the § 922(g)(1) charge, even if the underlying search was infirm.  That argument is

---

[3] Apart from a dispute over what qualifies as "favorable termination," the parties do not appear to dispute that this claim is timely under *McDonough*.  139 S. Ct. at 2161.

persuasive. Malicious prosecution "'concern[s] wrongful use of the legal process,' not a defendant's right to be free from illegal searches." *Scotti v. City of Phoenix*, 2013 WL 12210779, *12 (D. Ariz. Jan. 23, 2013) (quoting *Lacey v. Maricopa Cty.*, 693 F.3d 896, 919 (9th Cir. 2012)). Thus, the absence of reasonable suspicion or probable cause to search does not vitiate probable cause based on the ammunition recovered. *See Townes v. City of N.Y.*, 176 F.3d 138, 149 (2d Cir. 1999) ("The lack of probable cause to stop and search does not vitiate the probable cause to arrest, because (among other reasons) the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant."); *Davis v. United States*, 2010 WL 334502, at *19 n.26 (C.D. Cal. Jan. 28, 2010) (collecting cases).

Here, at the time Manansingh was charged, ammunition had been found in his residence. Based on that evidence and his felon status, the government has probable cause to charge him for prohibited person in possession of ammunition. Because "probable cause is an absolute defense to malicious prosecution," *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054–55 (9th Cir. 2009), Plaintiffs' malicious prosecution claim is dismissed on these grounds.

## 2. Favorable Termination

The United States further argues that the voluntary dismissal of the indictment due to the suppression of the ammunition does not equate to a "favorable termination," which is an essential element of a malicious prosecution

claim. *LaMantia*, 38 P.3d at 888. That argument is also persuasive. Although Nevada does not appear to have directly addressed the requirements of "favorable termination," other courts have held that "the favorable termination element of a malicious prosecution claim requires a termination reflecting the merits of the action and plaintiff's innocence of the misconduct." *Mills*, 921 F.3d at 1170–71 (discussing California law); *Lanning v. City of Glens Falls*, 908 F.3d 19, 22 (2d Cir. 2018) (discussing federal common law). Accordingly, "[i]f the dismissal is on technical grounds, for procedural reasons, or for any other reason not inconsistent with guilt, it does not constitute a favorable termination." *Mills*, 921 F.3d at 1171 (internal quotation marks omitted). Here, the suppression of the evidence and the dismissal of the indictment reflected the actions of law enforcement, not Manansingh's innocence. As a result, the "favorable termination" element of malicious prosecution has not been met. Plaintiffs' Eleventh Cause of Action is dismissed on these grounds as well.

### D. Abuse of Process (Claim 12)

"Abuse of process is a tort recognized to provide a remedy for cases in which legal procedure has been set in motion in proper form, with probable cause, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed." *Rashidi v. Albright*, 818 F. Supp. 1354, 1358 (D. Nev. 1993). To state a claim for abuse of process, a plaintiff must allege (1) "an ulterior

purpose by the defendants other than resolving a legal dispute," and (2) a willful and improper use of "legal process to accomplish that purpose." *LaMantia*, 38 P.3d at 880; *see also Taylor v. Clark Cty. Sch. Dist.*, 2019 WL 2453648, at *3 (D. Nev. June 11, 2019). "Thus, the claimant must provide facts, rather than conjecture, showing that the party intended to use the legal process to further an ulterior purpose." *Land Baron Inv. v. Bonnie Springs Family LP*, 356 P.3d 511, 519 (Nev. 2015).

Here, the only claim of abuse of process that is not time-barred is that allegation that "[t]he defendants' abuse of process continues to the present day" insofar as the United States "has obstinately, and absent a good faith basis, refused to respond to Mr. Manansingh's Motion for Attorney's Fees Pursuant to the Hyde Amendment." [ECF No. 49 at ¶ 245.] However, claims arising from abuse of process are not permitted under the FTCA as to employees who are not investigative or law enforcement officers. *See* 28 U.S.C. § 2680(h); *Bonilla v. United States*, 652 F. App'x 885 (11th Cir. 2016). Accordingly, Plaintiffs cannot maintain a claim based on the conduct of the prosecutor; it is therefore dismissed.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that the Probation Defendants' motion to dismiss [ECF No. 51] is DENIED as to Plaintiffs' Fifth Amendment fabrication of evidence claim against Defendants Mummey and Aquino (part of

Claim 4).  The Probation Defendants' and the United States' motions to dismiss [ECF Nos. 50, 51] are GRANTED in all other respects.

IT IS FURTHER ORDERED that all dismissed claims are DISMISSED with PREJUDICE except for Plaintiffs' claim for intentional infliction of emotional distress (Claim 10).  Plaintiffs have fourteen (14) days from the date of this Order to amend their emotional distress claim to plead a timely and plausible claim.

DATED this 24th day of May, 2021.

Donald W. Molloy, District Judge
United States District Court