IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| CHANDAN MANANSINGH, an individual, and ANGELA NAIRNS, an individual, | No. 2:20-cv-01139-DWM |
| Plaintiffs, | OPINION and ORDER |
| vs. | |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

Plaintiffs Chandan Manansingh and Angela Nairns (collectively "Plaintiffs")

allege multiple constitutional claims under *Bivens v. Six Unknown Named Agents*

*of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against five federal

probation officers ("Probation Defendants"), and state tort claims under the Federal

Tort Claims Act against the United States, based on a probationary search of their

residence and Manansingh's subsequent federal indictment.  [ECF Nos. 3, 49, 83.]

In 2021, this Court dismissed all but one of Plaintiffs' claims with prejudice.  [ECF

Nos. 73, 85, 89, 90.]  Plaintiffs sought interlocutory review of that decision, *see*

Fed. R. Civ. P. 54(b), and, in 2023, the Ninth Circuit remanded three issues for

further proceedings.[1]  [ECF Nos. 103, 104].  Ultimately, the bulk of Plaintiffs'

intentional infliction of emotional distress and abuse of process claims are

permitted to proceed.  However, Plaintiffs' malicious prosecution claim is

dismissed once again.

**BACKGROUND**

At this stage, the factual allegations in the complaint "are taken as true and

construed in the light most favorable to the plaintiffs."  *Lee v. City of L.A.*, 250

F.3d 668, 679 (9th Cir. 2001) (internal quotation marks and citation omitted).

## I.    The Search and Indictment

On April 1, 2016, Defendants Shawn Mummey, Robert Aquino, Todd

Fredlund, and Steve Goldner, officers with the United States Probation Office for

the District of Nevada, (collectively with Chad Boardman, "Probation

Defendants") executed a warrantless search of Plaintiffs' residence, pursuant to the

conditions of Manansingh's federal supervision.  [ECF No. 83 at ¶¶ 28, 30.]

Mummey and Aquino obtained approval for the search from Chief Probation

Officer Boardman based on Manansingh's positive drug screen for anabolic

steroids and his failure to pay towards his court-ordered fine.  [*Id.* at ¶¶ 28, 31.]

---

[1] The government's request for oral argument is denied.  *See* LR 78-1 ("All
motions may be considered and decided with or without a hearing.").

The search uncovered two pistol magazines containing multiple rounds of .380 caliber ammunition. [*Id.* at ¶ 65.]

On May 11, 2016, Manansingh was indicted for being a prohibited person in possession of ammunition under 18 U.S.C. § 922(g)(1). [*Id.* at ¶ 77.] Nevertheless, Manansingh successfully sought to suppress the ammunition. [*Id.* at ¶¶ 80, 128–29.] Following an evidentiary hearing, the trial court determined that the officers lacked reasonable suspicion for the search on the grounds that, *inter alia*, the Probation Defendants "did not have any information to suggest that Manansingh had alternative sources of income" and had received laboratory results which "confirmed that Manansingh had not been using steroids." *United States v. Manansingh*, 281 F. Supp. 3d 1096, 1100–01 (D. Nev. 2017), *aff'd* 733 F. App'x 390 (9th Cir. 2018). The United States ultimately moved to dismiss the indictment, which occurred on June 21, 2018. [ECF No. 83 at ¶ 152.]

## II.   Plaintiffs' Claims

Plaintiffs filed this suit on June 19, 2020, alleging eighteen causes of action related to the search and subsequent indictment. [ECF No. 3.] On November 20, 2020, the defendants moved to dismiss Plaintiffs' claims. [*See* ECF Nos. 37, 38.] Instead of responding, Plaintiffs filed an amended complaint on January 15, 2021, supplementing their factual allegations, adding four causes of action, and removing six causes of action. [*See* ECF No. 49.] In their First Amended Complaint,

3

Plaintiffs raised sixteen claims.  Against the Probation Defendants, they alleged

Fourth Amendment *Bivens* claims for unreasonable search (Claim 1), illegal entry

(Claim 2), and unreasonable seizure (Claim 3).  They also raised Fifth Amendment

*Bivens* claims for violations of substantive due process (Claim 4), procedural due

process (Claim 5), and equal protection (Claim 6).  They further alleged an Eighth

Amendment *Bivens* claim for cruel and unusual punishment (Claim 7), a claim of

conspiracy to deprive equal protection (Claim 8), and a claim of failure to

intercede (Claim 9).  Plaintiffs then alleged seven tort claims against the United

States pursuant to the FTCA: intentional infliction of emotional distress (Claim

10); malicious prosecution (Claim 11); abuse of process (Claim 12); invasion of

privacy (Claim 13); invasion of privacy – false light (Claim 14); trespass (Claim

15); and negligence (Claim 16).[2]  Fundamentally, Plaintiffs alleged that the

Probation Defendants knew that the grounds for the April 1, 2016 search were

bogus at the time, planted the ammunition they seized, and made false

representations throughout the prosecution.  [*See generally, id.*]  Plaintiffs further

alleged that the Probation Defendants' conduct was premised on their racial and

ethnic animus toward Manansingh, who is East Indian.  [*See id.* at ¶¶ 68–69, 91–

93, 98, 115–17, 122.]

---

[2] Nairns was a plaintiff in Claims 1–4, 8–13, 15–16.

In February 2021, the United States once again moved to dismiss Plaintiffs'
claims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure
12(b)(1), failure to state a claim upon which relief can be granted under Federal
Rule of Civil Procedure 12(b)(6), and failure to contain a short and plain statement
of Plaintiffs' claims showing that Plaintiffs are entitled to relief.  [ECF Nos. 50,
51.]  On May 24, 2021, that motion was granted as to all of Plaintiffs' claims but
two; Plaintiffs' Fifth Amendment fabrication of evidence claim against Defendant
Mummey and Aquino (Count 4) was permitted to proceed, and Plaintiffs were
given the opportunity to amend their claim for intentional infliction of emotional
distress (Count 10).  [ECF No. 73.]

On June 7, 2021, Plaintiffs filed their Second Amended Complaint, the
operative pleading.  [ECF No. 83.]  That pleading contains the same sixteen causes
of action as the previous complaint but adds factual support for their intentional
infliction of emotional distress claim.  [*Id.*]  The defendants were not required to
answer those claims that were previously dismissed with prejudice.  [ECF No. 85.]
The United States once again sought to dismiss Plaintiffs' emotional distress claim.
[ECF No. 86.]  This Court agreed that the claim was either untimely or failed to
state a claim and dismissed it with prejudice.  [ECF No. 89.]  And, given the
overall scope of the claims dismissed, this Court permitted Plaintiffs to pursue an
interlocutory appeal.  [*See id.*]; Fed. R. Civ. P. 54(b).

## III.   Appeal and Remand

Plaintiffs appealed, [ECF No. 91], and in March 2023, the Ninth Circuit entered an unpublished memorandum disposition affirming in part, reversing in part, and remanding for further proceedings.  [ECF No. 99.]  In November 2023, the Ninth Circuit issued an amended memorandum disposition, remanding the case to this Court "for limited fact-finding to determine whether Probation Defendants' conduct prior to June 24, 2017, establishes plausible claims for [intentional infliction of emotional distress] and abuse of process."  [ECF No. 103 at 10.]  The Ninth Circuit further directed that this Court "also consider, in the first instance, whether the malicious prosecution claim proceeds in light of *Thompson v. Clark*, 142 S. Ct. 1332 (2022)."  [*Id.*]  The parties have briefed these three issues.  [*See* ECF No. 108, 109, 110.]

LEGAL STANDARD

To proceed to the merits, Plaintiffs must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Dismissal is appropriate, however, "where there is no cognizable legal theory or an absence of sufficient facts alleged to

6

support a cognizable legal theory." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d

795, 800 (9th Cir. 2017) (internal quotation marks omitted).

ANALYSIS

As stated above, the terms of the Ninth Circuit's remand are narrow.  There

are only three matters at issue: (1) whether Plaintiffs state a plausible intentional

infliction of emotional distress claim or (2) abuse of process claim based on

Probation Defendants' conduct prior to June 24, 2017, and (3) whether Plaintiffs'

malicious prosecution claim proceeds in light of *Thompson v. Clark*, 142 S. Ct.

1332 (2022).  [*See* ECF No. 103.]  Because most of the government's arguments

go to the merits of Plaintiffs' claims, as opposed to the adequacy of their pleading,

the bulk of Plaintiffs' intentional infliction of emotional distress and abuse of

process claims shall proceed. Plaintiffs' malicious prosecution claim, however,

fails as a matter of law despite the *Thompson* decision.

## I.    Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress under Nevada

law, a plaintiff must allege (1) that the defendant's conduct was extreme and

outrageous; (2) that the defendant either intended or recklessly disregarded the

causing of emotional distress; (3) that the plaintiff actually suffered severe or

extreme emotional distress; and (4) that the defendant's conduct actually or

proximately caused the distress. *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev.

7

2000).  "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (per curiam) (internal quotation marks omitted).  The government insists that Plaintiffs have failed to allege any conduct that would meet this high standard under Nevada law.  These arguments are premature at this stage.

Plaintiffs allege that they suffered emotional distress that began with the Probation Defendants' search of Plaintiffs' residence on April 1, 2016, and continued through Manansingh's prosecution.  [*See* ECF No. 83 at ¶ 227.] Specifically, Plaintiffs' claim for intentional infliction of emotional distress inflicted prior to June 24, 2017 appears to be based on the following factual allegations:[3] the Probation Defendants' (1) "terrifying" entry into Plaintiffs' home with their guns drawn, [*id.*]; (2) concealing of facts relevant to the investigation, [*id.* ¶ 230]; (3) withholding of exculpatory evidence in the form of a toxicology report and Manansingh's probation file, [*id.* ¶¶ 231–32]; (4) "abuse of power" in pursuing a "terrifying false prosecution," [*id.* ¶ 233]; (5) failing to "intercede" on behalf of Plaintiffs, [*id.* ¶ 236]; and (6) "acts and words" demonstrating "racial and

---

[3] Count 10 contains no less than three "lists" of the factual allegations underlying Plaintiffs' intentional infliction of emotional distress claim.  [*See* ECF No. 83 at ¶¶ 225–42.]  These "lists" do not appear to be in chronological order and contain overlapping allegations.

ethnic animus," [*id.* ¶ 237].[4]  Taking Plaintiffs' allegations as true, *Lee*, 250 F.3d at 679, Probation Defendants entered Plaintiffs' home with their guns drawn, planted evidence, used racial slurs, and pursued a false prosecution against Manansingh that resulted in him spending months in jail.  Considered together, these allegations state a plausible claim for intentional infliction of emotional distress.

As argued by Plaintiffs, fabricating false or misleading evidence can be sufficiently "extreme or outrageous" as to state a claim for emotional distress.  *See Woods v. City of Reno*, 2020 WL 4194844, at *15 (D. Nev. July 21, 2020) (permitting an intentional infliction of emotional distress claim to proceed against investigators based on conviction vacated as a result of DNA evidence); *see also Lynch v. Omaha World-Herald Co.*, 300 F. Supp. 2d 896, 903 (D. Neb. 2004) (finding sufficient the plaintiff's allegation that the defendants engaged in a "deliberate pattern of actions designed to obtain a criminal conviction by use of fraud, concealment, heavy-handedness and destruction of evidence"); *Spring v. Brown*, 2007 WL 26766, at *7 (E.D. Wash. Jan. 3, 2007) (collecting cases).  And

---

[4] Although this Court previously determined that Manansingh's claim was based in part on Mummey's continued supervision from June 2 to June 23, 2017, [*see* ECF No. 89 at 5 (citing ECF No. 83 at ¶ 145)], that conduct is not specifically alleged in Count 10.  Consistently, Plaintiffs' allegations do not show that Mummey's conduct during this limited time period was sufficiently "extreme or outrageous" as to provide an independent basis for a claim for intentional infliction of emotional distress.  But these allegations may be considered as part of the general harassment and course of conduct that underlies Manansingh's emotional distress claim.

while "[l]iability for emotional distress will not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities,'" *Candelore v. Clark Cnty. Sanitation Dist.*, 975 F.2d 588, 591 (9th Cir. 1992) (quoting *Restatement (Second) of Torts*, § 46 cmt. d (1965)) (applying Nevada law), courts have found that "sexually harassing behavior, racial slurs, and accusations of criminal conduct could all possibly be considered outrageous conduct," *Nagata v. Quest Diagnostics Inc.*, 303 F. Supp. 2d 1121, 1128 (D. Haw. 2004) (discussing same Restatement in context of Hawaiian law).

Additionally, the fact the Probation Defendants were acting in a law enforcement capacity and allegedly knew of Manansingh's mental fragility, [*see* ECF No. 83 at ¶ 228], potentially strengthens Plaintiffs' claim.[5]  *See Restatement (Second) of Torts* § 46, cmt. e ("[T]he extreme and outrageous character of the conduct may arise from an abuse of the actor of a position . . . which gives him actual or apparent authority over the other, or power to affect his interests."); *id.* at cmt. f ("The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity.").  While the

---

[5] The Second Amended Complaint indicates, however, that Manansingh's "psychological disability" arose out of the Probation Defendants' conduct underlying this case. [*See* ECF No. 83 at ¶¶ 151, 228.]  Thus, depending on the timing of the specific conduct at issue, the Probation Defendants may not have had notice of a vulnerable condition prior to the tort occurring.

government argues that Probation Defendants had a valid basis for their conduct
and therefore it was not "extreme or outrageous," [*see* ECF No. 110 at 9–11], that
argument goes to the merits of Plaintiffs' claim, not the adequacy of the pleading.

      The government is correct, however, that Nairns' claim is more tenuous.
Under Nevada law, "the outrage requirement is more difficult to meet when the act
has been directed against a third party" and the plaintiff is "a mere witness to the
occurrence." *Star v. Rabello*, 625 P.2d 90, 92 (Nev. 1981).  Third party recovery is
generally limited to situations "where the defendant's conduct was not only
outrageous but unquestionably violent and shocking." *Nelson v. City of Las Vegas*,
665 P.2d 1141, 1145 (Nev. 1983).  To the extent Nairns' claims are predicated on
the Probation Defendants' conduct vis-à-vis Manansingh, they fail to meet this
standard.  Plaintiffs allege, however, that Nairns was directly harmed when the
Probation Defendants "terrifying[ly]" entered her home, [ECF No. 83 at ¶ 227],
and the prosecution team harassed and intimidated her to cooperate against
Manansingh, [*id.* ¶¶ 137–38].  Taken as true, *Lee*, 250 F.3d at 679, the former is
sufficient to state a claim.  As it relates to the latter, Nairns merely alleges that the
prosecutor contacted her without counsel present and told her that she "w[ould]
end up getting herself in trouble if she testifie[d] without speaking to him first."
[ECF No. 83 at ¶ 138.]  This single statement is insufficient to show "conduct . . .
which is outside all possible bounds of decency and is regarded as utterly

Case 2:20-cv-01139-DWM   Document 111   Filed 04/15/24   Page 12 of 22

intolerable in a civilized community." *Maduike*, 953 P.2d at 26. Rather, Nairns'

claim of harassment falls within the class of nonactionable "insults, indignities,

threats, annoyances, petty oppressions, or other trivialities.'" *Candelore*, 975 F.2d

at 591; *see also Jackson v. United States*, 33 F. App'x 293, 296 (9th Cir. 2002)

(concluding that statement made by officer upon releasing suspect, i.e., that she

would "still be in jail were she outside the Reservation," did not "amount to

extreme and outrageous conduct").

Based on the foregoing, Manansingh's intentional infliction of emotional

distress claim shall proceed on the facts presented insofar as he has alleges that the

Probation Defendants entered his home with their guns drawn, fabricated evidence,

and engaged in a deliberate pattern of actions designed to obtain a criminal

conviction by use of fraud. Nairns' claim, however, shall proceed only on the

limited basis of Probation Defendants' entry into her home.

## II.   Abuse of Process (Count 12)

"Abuse of process is a tort recognized to provide a remedy for cases in

which legal procedure has been set in motion in proper form, with probable cause,

but nevertheless has been perverted to accomplish an ulterior purpose for which it

was not designed." *Rashidi v. Albright*, 818 F. Supp. 1354, 1358 (D. Nev. 1993).

To state a claim for abuse of process, a plaintiff must allege "(1) an ulterior

purpose by the defendants other than resolving a legal dispute, and (2) a willful act

in the use of the legal process not proper in the regular conduct of the proceeding."
*LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002) (internal quotation marks
omitted).; *see also Taylor v. Clark Cty. Sch. Dist.*, 2019 WL 2453648, at *3 (D.
Nev. June 11, 2019). "[U]nder Nevada law an abuse of process claim does not
have a causation element." *Woods v. City of Reno*, 2020 WL 4194844, at *15 (D.
Nev. July 21, 2020) (finding evidence of fabrication sufficient to raise a genuine
dispute of fact as to abuse of process). "Malice, want of probable cause, and
termination in favor of the person initiating or instituting proceedings are not
necessary elements for a prima facie abuse of process claim." *LaMantia*, 38 P.3d
at 879. However, "[t]he mere filing of a complaint with malicious intent is
insufficient to state an abuse of process claim. There must also be some
subsequent act to filing which abuses the process." *Best v. Beresford*, 2019 WL
1461921, at *7, *adopted* 2019 WL 1472360 (D. Nev. 2019) (internal quotation
marks and alterations omitted).

Here, Plaintiffs allege the Probation Defendants made "misleading and
material misrepresentations to invoke the warrantless search clause of Mr.
Manansingh's probation in order to search his residence in the absence of probable
cause or reasonable suspicion." [ECF No. 83 at ¶ 252.] They further allege that the
Probation Defendants fabricated evidence, planted the ammunition, made false and
misleading statements at the suppression hearing, and intentionally withheld

13

exculpatory evidence based on malicious intentions such as "racial bias, motive, and personal animus," and "likely" made misleading statements to the grand jury. [*Id.* at ¶¶ 252–56.]  Plaintiffs also allege that the prosecutor inappropriately contacted Nairns and pursued a frivolous appeal, all to intimidate and harass them. [*Id.* ¶¶ 253, 256.]  Finally, Nairns alleges that Mummey used the service of subpoenas to "embarrass, verbally harass, and intimidate" her.  [*Id.* ¶ 254.]  The government argues that "Plaintiffs have not adequately alleged either an ulterior purpose or a willful act sufficient to allege abuse of process."  [ECF No. 108 at 21.]  At this stage of the proceeding, the bulk of Plaintiffs' abuse of process claim is permitted to proceed.

## A.    Claims Based on the Actions of the Prosecutor

Plaintiffs allege that the federal prosecutor abused the process of law when he contacted Nairns to "influence her testimony" and "frivolous[ly]" pursued an appeal of the district court's suppression order.  [*See* ECF No. 83 at ¶¶ 253, 256.] However, the conduct of the prosecutor is not cognizable under the FTCA.  *See* 28 U.S.C. § 2680(h); [ECF Nos. 73 at 34, 103 at 4.]  Thus, these allegations do not support a viable abuse of process claim.

## B.    Ulterior Purpose

"[T]he claimant must provide facts, rather than conjecture, showing that the party intended to use the legal process to further an ulterior purpose."  *Land Baron*

*Invs. v. Bonnie Springs Fam. LP*, 356 P.3d 511, 519 (Nev. 2015). "An ulterior

purpose is any improper motive underlying the issuance of legal process."

*Posadas v. City of Reno*, 851 P.2d 438, 445 (Nev. 1993). "However, there is no

liability when the defendant has done no more than carry out the process to its

authorized conclusion, even if he or she does so with bad intentions." *Mazzeo v.*

*Gibbons*, 2010 WL 11629641, at *2 (D. Nev. Mar. 19, 2010); *see Donahoe v.*

*Arpaio*, 869 F. Supp. 2d 1020, 1061 (D. Ariz. 2012) ("Even where . . . litigation is

motivated by pure spite, that is insufficient to state an abuse of process claim

where process is used only to accomplish the result for which it was created."

(Internal quotation marks and alteration omitted)).

     Here, Plaintiffs have alleged that the Probation Defendants undertook the

conduct described above to harass Plaintiffs. In response, the government argues

that the allegation of harassment is insufficient to show ulterior purpose as a matter

of law. As argued by the government, courts have indeed stated that "an action

[for abuse of process] lies only where the process is used to obtain an unjustifiable

*collateral advantage.* For this reason, mere vexation or harassment are not

recognized as objectives sufficient to give rise to the tort." *Snyder & Assocs.*

*Acquisitions LLC v. United States*, 859 F.3d 1152, 1161 (9th Cir. 2017) (alteration

and emphasis in original) (quoting *Younger v. Solomon*, 38 Cal. App. 3d 289, 297

(Cal. 1974)). However, Plaintiffs' allegations of harassment are more specific and

allege collateral consequences separate from the judicial process. While Plaintiffs'

allegation that Mummey "never liked [Manansingh], and was going to do whatever

it takes to 'get him,'" [ECF No. 83 at ¶ 69], is insufficient on its own, Plaintiffs

further allege that Mummey viewed Manansingh as a wealthy and successful black

man and sough to "strip[] him of his rights, his dignity, his freedom, and his

livelihood at all costs," [*id.* ¶¶ 119, 120, 121, 127]. This included pursing criminal

charges so that "Manansingh would not be eligible to practice law in Nevada." [*Id.*

¶ 121.]

As it relates to Nairns, while the government is correct that Mummey was

permitted to serve subpoenas as a matter of law, using him to serve a subpoena

given his involvement with this case and his history with Plaintiffs is "the type of

allegation that supports a claim for abuse of process." *Donahoe*, 869 F. Supp. 2d

at 1060–61 (allowing abuse of process claim to survive summary judgment where

the process server "had been previously prosecuted for threatening to kill [the

plaintiff]").

Accordingly, Plaintiffs have adequately alleged ulterior purpose.

## C.   Willful Act

The government further argues, however, that even if Plaintiffs can show

ulterior purpose, they cannot "identify a 'willful act in the use of the legal process

not proper in the regular conduct of the proceeding' to support their abuse of

process claim." [ECF No. 110 at 17–18 (quoting *LaMantia*, 38 P.3d at 879).]
"[T]he filing of a criminal complaint cannot be the willful act, a plaintiff must
allege a willful act *after* filing to satisfy the second element." *Brown v. Lever*,
2018 WL 1903120, at *6 (D. Nev. Apr. 20, 2018); *see also Land Baron Invs.*, 356
P.3d at 519–20 (noting that a "majority of courts have held that merely filing a
complaint and proceeding to properly litigate the case does not meet this
requirement").

In support of its argument, the government insists that neither the
withholding of exculpatory evidence nor the proffering of false representations
during the suppression hearing "directly implicate the court's process." [ECF No.
ECF No. 108 at 21; ECF No. 110 at 18.] However, "process" encompasses "the
entire range of procedures incident to the litigation process." *Nienstedt v. Wetzel*,
651 P.2d 876, 881 (Ariz. App. 1982) (discussing Arizona law). The government
further argues, however, that any communications made during a judicial
proceeding are absolutely privileged under Nevada law. While the government is
once again generally correct, *see Circus Circus Hotels, Inc. v. Witherspoon*, 657
P.2d 101, 104 (Nev. 1983) ("[C]ommunications uttered or published in the course
of judicial proceedings are absolutely privileged so long as they are in some way
pertinent to the subject of controversy."), Plaintiffs' allegations are broader than
the statements made by Probation Defendants. *See, e.g.*, *Woods*, 2020 WL

17

4194844, at *15 (permitting an abuse of process claim to proceed based on a fabrication of evidence allegation).

### D.   Conclusion

Ultimately, this is not a case where Plaintiffs have alleged that the Probation Defendants merely filed a case and proceeded to properly litigate it.  Rather, Plaintiffs have alleged "a multi-year conspiracy, consisting of numerous steps throughout the course of litigation, all undertaken for an ulterior purpose."  [ECF No. 109 at 13.]  Accordingly, apart from Plaintiffs' allegations against the prosecutor, Plaintiffs have stated a claim for abuse of process.

### III.   Malicious Prosecution (Count 11)

To state a claim for malicious prosecution under Nevada law, a plaintiff must allege (1) that the defendant lacked probable cause to initiate the prosecution, (2) malice, (3) the prior criminal proceedings were terminated in his favor, and (4) he suffered damages.  *LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002).  The third element of "favorable termination" is at issue here.  This Court previously determined that "the voluntary dismissal of Manansingh's indictment was not a favorable termination sufficient for a malicious prosecution claim."  [ECF No. 103 at 9.]  The Ninth Circuit remanded this issue for reconsideration in light of the Supreme Court's intervening decision in *Thompson v. Clark*, wherein the Court held that "[t]o demonstrate favorable termination of a criminal prosecution for the

18

purposes of the Fourth Amendment claim under [42 U.S.C.] § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." 596 U.S. 36, 39 (2022). But because *Thompson* does not alter the state law requirements for "favorable termination," Plaintiffs' malicious prosecution claim is once again dismissed for failure to state a claim.

The government argues that *Thompson* does not dictate the Court's conclusion here because *Thompson* does not apply to state law malicious prosecution claims but rather is limited to a Fourth Amendment claim brought under 42 U.S.C. § 1983. In response, Plaintiffs argue that the government's position "is both true and entirely irrelevant." [ECF No. 109 at 11.] According to Plaintiffs, the flaw in the government's logic is not that *Thompson* dictates federal common law, but rather the government's insistence that, in the absence of Nevada law on point, Nevada would rely on California's more rigorous "favorable termination" standard. Plaintiffs contend that Nevada courts look to federal law to resolve civil rights claims and would therefore "embrace" the less onerous "favorable termination" standard set in *Thompson*. [ECF No. 109 at 10–11 (collecting cases).] The government has the better argument.

"Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007) (internal quotation

19

marks omitted).  "In answering that question, this court looks for guidance to decisions by intermediate appellate courts of the state and by courts in other jurisdictions." *Id.* (internal quotation marks omitted).  Here, the question is whether Nevada would look to federal common law—i.e., *Thompson*—or another source of law, such as California, to define "favorable termination" for the purposes of malicious prosecution.  This issue is dispositive as Plaintiffs concede that if the Court looks to California law, Plaintiffs' claim would fail, as a claim for malicious prosecution in California "requires a termination reflecting the merits of the action and plaintiff's innocence of the misconduct," and the dismissal of an action following the exclusion of evidence on Fourth Amendment grounds does not meet this standard.  *Mills v. City of Covina*, 921 F.3d 1161, 1170–71 (9th Cir. 2019).  Put simply, albeit archaically, "if the accused manages to thwart the efforts of officials by suppression of evidence . . . the abandonment of the prosecution resulting in a dismissal of the complaint cannot be used by him as the basis of an action for malicious prosecution." *Jaffe v. Stone*, 114 P.2d 335, 338 (Cal. 1941) (citing *Restatement (Second) of Torts* § 660).

Like California, the Nevada Supreme Court has previously relied on the Restatement (Second) of Torts in assessing malicious prosecution claims.  *See LaMantia*, 38 P.3d at 880 n.10 (citing § 653).  As indicated above, the Restatement takes a dim view of the exclusionary rule under the Fourth Amendment, explicitly

20

stating that "[a] termination of criminal proceedings in favor of the accused other than by acquittal is not a sufficient termination to meet the requirements for a cause of action for malicious prosecution if . . . the charge is withdrawn or the prosecution abandoned because of misconduct on the part of the accused or in his behalf for the purpose of preventing proper trial." *Restatement (Second) of Torts* § 660(b) (1977). The commentary to the rule then explains that the suppression of evidence "by the accused" falls into this category. *See id.* § 660 cmt. d.; *see Stone v. Powell*, 428 U.S. 465, 490 (1976) (explaining that the application of the exclusionary rule diverts "from the ultimate question of guilt or innocence that should be the central concern in a criminal proceeding"). Given Nevada's previous reliance on guidance from this same source, it is likely the Nevada Supreme Court would turn to it once again, and, as a result, view "favorable termination" the same way as California.

Yet Plaintiffs insist that Nevada would follow *Thompson* because its reasoning applies just as strongly in the state law context as it does in the context of a constitutional tort. Plaintiffs are indeed correct that *Thompson* provides a strong basis for concluding that the lack of conviction, as opposed to a showing of innocence, is more consistent with the Fourth Amendment. *See* 596 U.S. at 48. However, *Thompson* is careful to specify that its holding is inapposite to the Restatement because the elements of a § 1983 malicious prosecution claim are

21

based on the law as it existed in 1871, when 42 U.S.C. § 1983 was enacted, and

"the Restatement did not purport to describe the consensus of American law as of

1871." *Id.* at 47–48.  There is no reason to find Nevada would ascribe to the law as

it stood in 1871 over the law as stated in the Restatement.  To the contrary, Nevada

has consistently adopted Restatement analyses.  *See Abbott v. United Venture Cap.,*

*Inc.*, 718 F. Supp. 828, 832–33 (D. Nev. 1989) (discussing "favorable termination"

in the civil context and listing instances where Nevada has previously followed the

Restatement).

Because Nevada is more likely to follow the Restatement (Second) of Torts

than the federal common law as altered by *Thompson*, Plaintiffs' malicious

prosecution claim fails as a matter of law.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that Plaintiffs' intentional

infliction of emotional distress (Count 10) and abuse of process (Count 12) claims

are permitted to proceed as outlined above.  Plaintiffs' malicious prosecution claim

(Count 11) is dismissed.  A trial schedule for Counts 4, 10, and 12 shall be set by

separate order.

DATED this 5 day of April, 2024.

14:17 P.M.

Donald W. Molloy, District Judge
United States District Court

22