IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

|  |  |
|---|---|
| CHANDAN MANANSINGH and ANGELA NAIRNS,<br><br>  Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>  Defendants. | Case No. 2:20-cv-01139-DWM<br><br>OPINION<br>and ORDER |

Plaintiffs Chandan Manansingh and Angela Nairns (collectively "Plaintiffs") allege multiple constitutional claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against five federal probation officers ("Probation Defendants"), and state tort claims under the Federal Tort Claims Act ("FTCA") against the United States, based on a probationary search of their residence and Manansingh's subsequent federal indictment. [ECF Nos. 3, 49, 83.] At this point in the case, only three claims remain: Fifth Amendment due process fabrication of evidence (Count 4), emotional distress (Count 10), and abuse of process (Count 12). [*See* ECF Nos. 73, 85, 89, 90, 111.] Probation Defendants now move for judgment on the pleadings on Plaintiffs' fabrication of evidence claim, arguing that recent Supreme Court and Ninth Circuit

1

jurisprudence has all but eliminated the ability to bring a *Bivens* claim. [ECF No. 119]; Fed. R. Civ. P. 12(c). Because the Probation Defendants are correct, their motion is granted, and Probation Defendants are dismissed from this action.

## BACKGROUND

At this stage, the factual allegations in the complaint "are taken as true and construed in the light most favorable to the plaintiffs." *Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001) (internal quotation marks and citation omitted).

On April 1, 2016, Defendants Shawn Mummey, Robert Aquino, Todd Fredlund, and Steve Goldner, officers with the United States Probation Office for the District of Nevada, (collectively with Chad Boardman, "Probation Defendants") executed a warrantless search of Plaintiffs' residence, pursuant to the conditions of Manansingh's federal supervision. [ECF No. 83 at ¶¶ 28, 30.] Mummey and Aquino obtained approval for the search from Chief Probation Officer Boardman based on Manansingh's positive drug screen for anabolic steroids and his failure to make payments towards his court-ordered fine. [*Id.* at ¶¶ 28, 31.] The search uncovered two pistol magazines containing multiple rounds of .380 caliber ammunition. [*Id.* at ¶ 65.]

On May 11, 2016, Manansingh was indicted as a prohibited person in possession of ammunition under 18 U.S.C. § 922(g)(1). [*Id.* at ¶ 77.] Nevertheless, Manansingh successfully sought to suppress the ammunition. [*Id.* at

¶¶ 80, 128–29.] Following an evidentiary hearing, the district court determined that the officers lacked reasonable suspicion for the search on the grounds, *inter alia*, that the Probation Defendants "did not have any information to suggest that Manansingh had alternative sources of income" and had received laboratory results which "confirmed that Manansingh had not been using steroids." *United States v. Manansingh*, 281 F. Supp. 3d 1096, 1100–01 (D. Nev. 2017), *aff'd* 733 F. App'x 390 (9th Cir. 2018). The United States ultimately moved to dismiss the indictment, which occurred on June 21, 2018. [ECF No. 83 at ¶ 152.]

Plaintiffs filed this suit on June 19, 2020, alleging eighteen causes of action related to the search and prosecution. [ECF No. 3.] Following several amendments, pretrial rulings, and an appeal, three claims remain: Fifth Amendment due process fabrication of evidence (Count 4), emotional distress (Count 10), and abuse of process (Count 12). [*See* ECF No. 111 at 3–6 (outlining the procedural history).] The Probation Defendants now seek to dismiss Plaintiffs' Fifth Amendment due process claim. [ECF No. 119.]

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard governing a Rule 12(c) motion for judgment on the pleadings is "functionally identical" to that governing a Rule 12(b)(6) motion to dismiss. *Cafasso v. Gen.*

3

*Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). To proceed to the merits, Plaintiffs must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal is appropriate, however, "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (internal quotation marks omitted).

## ANALYSIS

### I. Background

#### A. The *Bivens* Framework

In a constitutional action against a federal officer, a threshold consideration is whether a plaintiff may bring suit in the first place. *See Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017). In 1971, the Supreme Court in *Bivens* "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Hernandez v. Mesa*, 582 U.S. 548, 553 (2017) (per curiam) (internal quotation marks omitted). The Court held that the plaintiff was entitled to sue federal agents for damages arising out of an

4

unlawful arrest and search under the Fourth Amendment. *Bivens*, 403 U.S. at 397. Since then, the Supreme Court has recognized implied causes of action in just two other contexts: a Fifth Amendment due process claim against a congressman for gender discrimination, *see Davis v. Passman*, 442 U.S. 228, 248–49 (1979), and an Eighth Amendment deliberate indifference claim for failure to provide adequate medical treatment to an inmate, *Carlson v. Green*, 446 U.S. 14, 19 (1980). Otherwise, the Supreme Court has repeatedly refused to recognize an implied damages remedy against federal officials. *See Abbasi*, 582 U.S. at 121 (describing the expansion of *Bivens* as "disfavored").

Consistently, there is a two-step test for determining when a *Bivens* claim should be recognized. *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020). The first question is "whether the request involves a claim that arises in a 'new context' or involves a 'new category of defendants.'" *Id.* (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). If so, the second question is "whether there are any special factors that counsel hesitation about granting the extension." *Id.* at 94 (cleaned up). If there are, the request is rejected. *Id.* at 94–95. While the Supreme Court has not provided an exhaustive list of relevant factors, it has explained that this second "inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 582 U.S. at 136.

5

### B. This Court's Previous Decision

Consistent with this two-step inquiry, in May 2021, this Court determined that while "a Fifth Amendment fabricated evidence claim based on the conduct of probation officers is unquestionably a new context," it did not appear that any special factors counseled against extending *Bivens* to these facts. [ECF No. 73 at 24–25.] Thus, Plaintiffs' Fifth Amendment claim was allowed to proceed.

### C. Subsequent Authority

In June 2022, the Supreme Court decided *Egbert v. Boule*, declining to extend *Bivens* recovery to either a Fourth Amendment excessive force claim or a First Amendment retaliation claim against a border patrol officer. 596 U.S. 482 (2022). Although the Court applied the two-step approach identified above, it clarified that the relevant inquiry under the second step is whether "the Judiciary is *at least arguably less equipped than Congress* to weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 492 (internal quotation marks omitted) (emphasis added). Going even further, the Court explained that the two-step process "often resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* at 492. Reinforcing that sentiment later in its decision, the Court once again stated: "A court faces only one question: whether there is *any* rational reason (even one)

6

to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* at 496 (quoting *Abbasi*, 582 U.S. at 136).

Since *Egbert*, the Ninth Circuit has consistently declined to recognize a *Bivens* remedy.[1] In *Mejia v. Miller*, for example, the Ninth Circuit rejected a Fourth Amendment excessive force claim against a Bureau of Land Management officer, emphasizing that "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." 61 F.4th 663, 669 (9th Cir. 2023) (quoting *Egbert*, 596 U.S. at 486). In reaching its conclusion, the Ninth Circuit recognized the severe constriction of *Bivens* claims post-*Egbert*, emphasizing that "[t]he question is no longer whether the Judiciary is well suited, but whether Congress is better suited." *Id.* at 667. In *Harper v. Nedd*, the Ninth Circuit was even more blunt about the impact of *Egbert*, stating: "Essentially . . . ,

---

[1] Notably, since *Egbert*, the Ninth Circuit has considered *Bivens* claims in over 20 different circumstances and, with limited exception, declined to recognize any *Bivens* actions. *See, e.g., Sheikh v. U.S. Dep't of Homeland Security*, 106 F.4th 918, 930 (9th Cir. 2024) (Fourth and Fifth Amendment fabrication of evidence); *Marquez v. C. Rodriguez*, 81 F.4th 1027, 1033 (9th Cir. 2023) (Fifth Amendment failure-to-protect pretrial detainee); *Chambers v. C. Herrera*, 78 F.4th 1100, 1109 (9th Cir. 2023) (First Amendment retaliation and Eighth Amendment failure to protect); *Harper v. Nedd*, 71 F.4th 1181, 1187 (9th Cir. 2023) (Fifth Amendment procedural due process); *Mejia v. Miller*, 61 F.4th 663, 669 (9th Cir. 2023) (Fourth Amendment excessive force and unlawful seizure); *Pettibone v. Russell*, 59 F.4th 449, 457 (9th Cir. 2023) (Fourth Amendment unlawful arrest and excessive force); *but see Stanard v. Dy*, 88 F.4th 811, 816–17 (9th Cir. 2023) (holding that an inmate's Eighth Amendment deliberate indifference to medical needs claim fell within the existing context of *Carlson*).

future extensions of *Bivens* are dead on arrival." 71 F.4th 1181, 1187 (9th Cir. 2023).

## II. Discussion

The Probation Defendants argue that Plaintiffs' fabrication of evidence claim is not cognizable post-*Egbert*. Alternatively, Probation Defendants argue that they are entitled to qualified immunity because Plaintiffs fail to "adequately allege deliberate fabrication of evidence on the part of either Mummey or Aquino." [ECF No. 119 at 20.] Plaintiffs disagree on both points, emphasizing that this Court has already determined that their fabrication claim can proceed and that it would be inappropriate to revisit that decision. Ultimately, because the Probation Defendants are right as to the impact of *Egbert*, the Court does not reach the issue of qualified immunity.

### A. Law of the Case

Plaintiffs first argue that the Court cannot revisit its *Bivens* determination under the law of the case doctrine. "[A] court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (internal quotation marks omitted). The purpose of the doctrine is to "promote judicial finality," and as such, it forecloses reconsideration of issues that were "actually considered and decided by the first court." *United States v. Cote*,

8

51 F.3d 178, 181 (9th Cir. 1995). However, "[t]he doctrine is not a limitation on a tribunal's power, but rather a guide to discretion." *Alexander*, 106 F.3d at 876. A court may exercise its discretion to depart from the law of the case if: (1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result. *Id.*

Here, the Probation Defendants argue that an intervening change in law has occurred in the form of *Egbert*. Plaintiffs disagree, emphasizing that *Egbert* applied the longstanding two-step *Bivens* framework. Probation Defendants have the better argument.

As argued by Plaintiffs, *Egbert* purported to follow the traditional two-step *Bivens* inquiry. *See* 596 U.S. at 492 ("To inform a court's analysis of a proposed *Bivens* claim, our cases have framed the inquiry as proceeding in two steps."). In truth, however, *Egbert* departed from precedent and adopted a one-step test, which asks whether there is "*any* reason to think that Congress might be better equipped" than a court to "weigh the costs and benefits of allowing a damages action to proceed." *See* 596 U.S. at 502–03 (Gorsuch, J., concurring) ("[The majority] recognizes that our two-step inquiry really boils down to a 'single question[.]'"); *id.* at 505 (Sotomayor, J., concurring in part and dissenting in part) ("[The majority] rewrites a legal standard . . . [and] contravenes precedent . . . ."); *see id.*

9

at 518 ("Today, . . . the Court pays lip service to the test set out in our precedents, but effectively replaces it with a new single-step inquiry designed to constrict *Bivens*."). This is despite the fact that the majority in *Ebert* presents "its newly announced standard as if it were always the rule." *Id.*

*Egbert* also lowers the bar for what type of alternative remedy may be considered as a "special factor" counseling against judicial intervention at step two. Specifically, the Court held that "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* at 498 (majority). That is the case even if the alternative remedy neither affords a right of participation or an appeal. *Id.* As suggested by Justice Sotomayor, an alternative remedy prior to *Egbert* tended to require one that Congress provided. *See id.* at 525 (Sotomayor, J., concurring in part and dissenting in part). However, under *Egbert*, "the existence of any disciplinary framework, even if crafted by the Executive Branch rather than Congress, and even if wholly nonparticipatory and lacking any judicial review, is sufficient to bar a court from recognizing a *Bivens* remedy." *Id.* at 525–26.

Based on the foregoing, *Egbert* changed the *Bivens* analysis enough to be considered an "intervening change in the law." *Alexander*, 106 F.3d at 876; *see Williams v. Baker*, 2023 WL 7323332, at *6 (E.D. Cal. Nov. 7, 2023) (citing

*Egbert* as constituting a "significant intervening change in the law"), *adopted* 2024 WL 1333172 (E.D. Cal. Mar. 28, 2024); *Decker v. Infante*, 2024 WL 1287784, at *7 (E.D. Mich. Mar. 26, 2024) (declining to apply the law of the case doctrine because the magistrate judge had made his prior recommendation "without the benefit of briefing on the effect of [*Egbert*], a decision in which the Supreme Court continued its narrowing of *Bivens*"); *Prescott v. United States*, 2022 WL 18859316, at *2 & n.2 (C.D. Cal. Dec. 21, 2022) ("[T]he Supreme Court's intervening decision in *Egbert* has changed the legal landscape."), *adopted* 2023 WL 2188692 (C.D. Cal. Feb. 22, 2023). Thus, the law of the case doctrine does not preclude reconsideration of Plaintiffs' fabrication of evidence claim.

    **B.    The *Bivens* Inquiry**

Despite the sea change of *Egbert*, courts continue to apply the two-step analysis discussed above. *See, e.g.*, *Harper*, 71 F.4th at 1185. Thus, that is the framework utilized below, recognizing that the two steps now "often resolve into a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 596 U.S. at 492.

    **1.    "New Context"**

As this Court previously determined, "a Fifth Amendment fabricated evidence claim based on the conduct of probation officers is unquestionably a new context" under *Bivens*. [ECF No. 73 at 24.] The Fifth Amendment fabrication of

11

evidence claim presented here is fundamentally different from the Fifth Amendment discrimination claim pursued in *Davis*. *See* 442 U.S. at 243–44. And even though this Court recognized that other lower courts have extended *Bivens* to similar contexts under the Fourth Amendment, [*see* ECF No. 73 at 25 (citing *Jacobs v. Alam*, 951 F.3d 1028, 1038–39 (6th Cir. 2019), and *Lanuza v. Love*, 899 F.3d 1019, 1033 (9th Cir. 2018))], "a context is 'new' if it is 'different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court,' rather than any lower court." *Sheikh v. U.S. Dep't of Homeland Security*, 106 F.4th 918, 926 (9th Cir. July 5, 2024) (quoting *Abbasi*, 582 U.S. at 139). Consistently, the Ninth Circuit recently held that a Fifth Amendment fabrication of evidence claim against an agent of the Department of Homeland Security was a "new context" despite circuit precedent to the contrary. *See id.* at 925–26 ("We join the weight of consensus in concluding that [Fourth Amendment] allegations of fabrication of evidence related to a criminal prosecution meaningfully differ from the allegations in *Bivens* such that they present a new context."). Moreover, this case involves probation officers that, as Judiciary employees, present "new actors." *See Abbasi*, 582 U.S. at 140 (explaining that, *inter alia*, the "legal mandate under which the officer was operating" is an example of a new context).

Finally, even if this case was on fours with *Bivens* or *Davis*, the Supreme Court admonished in *Egbert* that "a plaintiff cannot justify a *Bivens* extension

12

based on 'parallel circumstances' with *Bivens*, [*Davis*], or *Carlson* unless he also satisfies the 'analytic framework' prescribed by the last four decades of intervening case law." 596 U.S. at 501. Thus, under *Egbert*, even if a case presented facts identical to those in *Bivens*, it would likely be a "new context."

### 2.   "Special Factors"

The second step of the *Bivens* analysis asks whether there are "special factors" that counsel against recognizing a *Bivens* remedy, i.e. "whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* at 492 (internal quotation marks omitted). "If there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy." *Id.* (internal quotation marks omitted). Such a reason can include if "Congress already has provided, or . . . authorized the Executive to provide, an alternative remedial structure." *Id.* at 493.

To be sure, the facts of this case and the interests at issue are different from many of the recent *Bivens* decisions, including *Egbert*. In *Egbert*, the Court held that the "risk of undermining border security provides a reason to hesitate before extending *Bivens* into this field." *Id.* at 494 (quoting *Hernandez*, 589 U.S. at 108). Indeed, the Court "reaffirmed that a *Bivens* cause of action may not lie where . . . national security is at issue." *Id.* Because this case does not involve the border or national security, this part of the *Egbert* analysis is inapposite.

13

Similarly, in *Sheikh*, which involved Fourth and Fifth Amendment fabrication of evidence claims against agents from the Department of Homeland Security, the court was concerned about the Judiciary stepping on the toes of the Executive. Thus, the Ninth Circuit held that special factors counseled against expanding *Bivens* in a more generalized law enforcement context on the premise that it "risk[s] intrusion into the Executive Branch's investigative and prosecutorial function." 106 F.4th at 926. But that analysis once again diverges from the facts in this case. Here, Probation Defendants are Judiciary staff.

Nevertheless, *Egbert* effectively concludes that *Bivens* cannot be extended if a court "cannot predict the systemwide consequences of recognizing a cause of action under *Bivens*," and that that "uncertainty alone is a special factor that forecloses relief." 596 U.S. at 493 (internal quotation marks omitted). Indeed, it is impossible to know the "systemwide consequences" of permitting a Fifth Amendment fabrication of evidence claim to proceed against federal probation officers. Thus, consistent with *Egbert*, the "special factor" of uncertainty, which is nonetheless present in any and every case, counsels against extending *Bivens* here.

More importantly, however, under *Egbert*, if there is any alternative remedy, *Bivens* is foreclosed. That is the case even if the alternative remedy does not allow for the participation of the aggrieved party or judicial review. *See id.* at 497. Here, there are three alternative remedies, two of which Plaintiffs have exercised. First,

14

Plaintiffs successfully challenged the Probation Defendants' conduct in Manansingh's criminal case, resulting in the suppression of the allegedly planted ammunition. Second, Plaintiffs have brought tort claims against the government under the FTCA. Finally, Plaintiffs may make a complaint to the clerk of court. [*See* ECF No. 119 at 13–14 (describing this internal process).] Consistent with *Egbert*, the existence of these remedies forecloses Plaintiffs' *Bivens* claim.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that Probation Defendants' motion for judgment on the pleadings [ECF No. 119] is GRANTED. Count 4 of the Second Amended Complaint is DISMISSED. Because Count 4 was the only remaining claim against the individual defendants, Probation Defendants are DISMISSED from this action. The case caption is amended to reflect this Order.

DATED this __1st__ day of October, 2024.

13:58 P.M.

Donald W. Molloy, District Judge
United States District Court